In re Susan P. MASON, Debtor.

Susan P. MASON, Plaintiff,

v.

Jacob D. PORTNOY, Defendant.

Bankruptcy No. 93–10359.
Adv. No. 93–1041.

United States Bankruptcy Court,
D. Rhode Island.

May 12, 1994.

Christopher M. Lefebvre, Pawtucket, RI, for debtor/plaintiff.

John T. Walsh, Higgins, Cavanagh & Cooney, Providence, RI, for defendant.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on January 12, 1994, on the Debtor's complaint against Jacob Portnoy, Esq., for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. At the conclusion of the hearing, we asked the parties to submit post-trial memoranda, and they complied with our request. Upon consideration of the entire record and the submissions of the parties, we find that the Plaintiff has failed to meet the burden of proof required under the statutes in question, and that her complaint should be denied.

## BACKGROUND

Circa 1989, Susan Mason had incurred a debt to Apex Department Store in the amount of $526, which became delinquent. Apex referred the matter for collection to Jacob Portnoy, Esq., and on October 12, 1990, Mr. Portnoy filed a complaint in the Rhode Island Sixth Division District Court. Mason did not answer the complaint, and a default judgment was entered on November 1, 1990.

Mr. Portnoy initiated supplementary proceedings to collect the judgment and on July 29, 1992, a citation was issued directing Susan Mason to appear in court on September 15, 1992, to show cause why she should not be ordered to pay the $526 judgment.[1] Mrs. Mason failed to appear at the show cause hearing and a body attachment was issued for her arrest. On February 10, 1993, in the early a.m., the "Fugitive Task Force," so-called, went to Mrs. Mason's house to apprehend her to assure her appearance in court that day. After learning that she had small children at home, however, and in exchange for her promise to voluntarily appear in court later that morning, Ms. Mason was not placed under arrest. Instead of going to court, however, as she had agreed to do, Mrs. Mason filed a Chapter 7 petition that same day, and invoked the automatic stay as to any further debt collection efforts. There is no allegation that the Defendant attempted any debt collection after the petition.

## DISPUTED FACTS:

Mason alleges that beginning in 1991, she began receiving letters from Attorney Portnoy regarding the Apex debt, about one every six weeks, and that one letter was received at her place of employment, the Hopkins Manor Nursing Home in North Providence, Rhode Island. In addition to causing her embarrassment, she complains that she was reprimanded by her supervisor because employees are not allowed to receive personal mail at work. She claims that none of the letters contained the notice required under 15 U.S.C. §§ 1692e(11) and 1692g.[2] None of

---

1. The citation was first issued on April 15, 1992, but was lost, and Mr. Portnoy requested that a second citation be issued.

2. Section 1692e(11) states in part that "failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" is a violation of the act. 15 U.S.C. § 1692e(11).

   Section 1692g states:
   (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
   (1) the amount of the debt;
   (2) the name of the creditor to whom the debt is owed;
   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
   15 U.S.C. § 1692g.

this alleged correspondence was offered at the hearing, and Mr. Portnoy denies the bulk of the Plaintiff's allegations.

Ms. Mason also contends that to collect this $526 debt, Mr. Portnoy made over 100 phone calls to her between the Spring and Fall of 1992, with the majority of calls made at work,[3] and that in several of the phone conversations Portnoy threatened to have her "picked up at work in front of her fellow employees." As a result of these alleged threats, she constantly feared that police would arrest her at work.[4] Mason further states that on one occasion, Portnoy called her 25 times at work within a one hour period.[5]

On April 30, 1992, Mason allegedly mailed a letter to Portnoy, asking that he no longer telephone her at work. (See Plaintiff's Ex. A). This (copy) is the only document relating to this entire dispute that was produced by Mrs. Mason. All of the offensive correspondence received from Portnoy was allegedly lost when Mason moved.

Portnoy denies all of the material allegations and, testifying from records, contends that he spoke with her by telephone on only four occasions. The first contact was when she called him on April 27, 1992, and proposed a payment plan which he accepted, but to which Mason did not adhere. He states that his conversations with Mason were low key and not confrontational, and that he has no record or recollection of sending any letters. He also states that he never received Mason's letter of April 30, 1992. Portnoy testified that he handles all of his collection cases in a non-hostile manner because he gets better cooperation and results from debtors using this approach, and that he did not depart from his usual practice in this case.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

The resolution of this dispute hinges on credibility, as to whether the Plaintiff has met her burden of proof, and we find that she has not. The only evidence presented in support of the Plaintiff's case was her own uncorroborated and unconvincing testimony, and the *copy* of a letter dated April 30, 1992, allegedly mailed to Mr. Portnoy. While the Plaintiff has undoubtedly established that she was being harassed by creditors (and there were many), she has not demonstrated that the Defendant is responsible for *any* of the harassment.

As part of the record, we read the deposition testimony of: Carol Sabella, the administrator of Hopkins Manor and Mrs. Mason's supervisor; Adella Dolce, the personnel manager; Jean Couture, the receptionist; and Edna Cook, Mrs. Mason's co-worker and best friend at Hopkins Manor, all of whom appeared under subpoena to support the Plaintiff's case. None of them, however, were able to corroborate any of the significant facts alleged by the Plaintiff.

The testimony of the Plaintiff and the deposition of Carol Sabella show clearly that Susan Mason was having serious financial and marital problems during this period in her life. Ms. Sabella stated that so many creditors were calling Mason at work "[i]t was unbelievable." She said, "I don't know how the girl worked." (Sabella Deposition at 5, lines 20–21; see also Cook Deposition). None of the deposed witnesses could establish that Mr. Portnoy made even one phone call to Mrs. Mason at work, or that he was the person who mailed the letter to her at Hopkins Manor. Jean Couture stated in her deposition that on one day she did receive 5

---

3. She also alleges that Portnoy called her twice at home before 8:00 a.m., in violation of 15 U.S.C. § 1692c(a)(1).

4. Mason testified that one morning, upon arriving at work, there was "an official looking car parked in front," and fearing it was the police, she went through various extra steps to get to her office via a rear entrance. She later learned, and admitted on cross-examination, that the official looking car was the fire marshal.

5. Mason testified that on this day she instructed the receptionist, Jean Couture not to forward any calls to her. However, when the same man kept calling and asking for Mason, Ms. Couture insisted that Mason take the call. Mason testified that when she answered the phone, Attorney Portnoy was the party calling.

to 7 phone calls for Mrs. Mason from the same person, and she told Mason that she should take the call. No one, however, could identify the caller. (See Couture Deposition at 3–4). Both Adella Dolce and Carol Sabella stated that if Mason was being harassed to the degree she alleges, she could easily have put a stop to it by reporting the problem to the receptionist and having the calls refused. However, the evidence is that Mrs. Mason did not tell anyone of Mr. Portnoy's alleged harassing tactics, not even her husband.

We do agree that Mrs. Mason was probably being called at work by creditors, at least one of whom (not Apex) was successful in attaching her wages. (See Defendant's Ex. 52). But while Mason targets Mr. Portnoy as *the* person responsible for the pressure and stress that she was feeling during the time in question, she has not established that suspicion. Mr. Portnoy testified, and we believe, that his collection practices are "low key" as described, and that, in his thirty-seven year career he has never garnished a debtor's wages. While this claim is quite surprising, we believe Mr. Portnoy and accept his version of what really transpired between these parties.[6] The assertion that he has never done a wage attachment would have been a simple matter to refute, but it was left unchallenged.

Plaintiff contends that even if her allegations as to harassment are rejected, we still must find a technical violation of 15 U.S.C. § 1692e(11), arguing that after each admitted phone conversation with Mason, Mr. Portnoy was required to mail a written § 1692e(11) notice. In his post-trial memorandum, however, Mr. Lefebvre abandoned this argument, conceding that there is no requirement that the § 1692e(11) notice be given in writing. He still argues, nevertheless, that Mr. Portnoy failed to comply with the disclosure requirement on the four occasions he admitted to speaking with the Debtor on the telephone. Again, we find that the Debtor has not met her burden of proof. The evidence presented regarding the content of the phone conversations is scant and inconclusive. Mr.

Portnoy said that he spoke with Mason four times about the Apex bill—April 27, May 12, June 10, and June 18, 1992, that he could not recall the details of the conversations, except that they were not confrontational. Mrs. Mason was not questioned specifically about these particular phone conversations. Based on the evidence before us, there is no basis for a finding that Mr. Portnoy violated the statute in question.

Finally, the Plaintiff argues that Mr. Portnoy was required to send a written validation notice under 15 U.S.C. § 1692g, after his initial conversation with her on April 27, 1992. Section 1692g states "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, send the consumer a written notice containing. . . ." 15 U.S.C. 1692g (emphasis added). The Plaintiff has not established that Mr. Portnoy's initial communication lacked the required notice. As was pointed out earlier, very little evidence was presented on the phone conversations in question.

For all of the foregoing reasons, we find that the Plaintiff has not met her burden of proof in this case, and conclude that the relief requested in her complaint must be and is DENIED.

Enter Judgment consistent with this opinion.

---

6. For completeness of the record and possible appellate purposes, if we were required to make findings as to credibility, we would resolve all disputed questions of fact in favor of the Defendant.